Case 5:22-cv-00081 Document 40 Filed on 09/27/23 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
September 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| PHH MORTGAGE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 5:22-CV-81 |
| | § | |
| SANDRA HARRISON *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

In this foreclosure action, Plaintiff PHH Mortgage Corporation ("PHH") has sued three Defendants: Sandra Harrison, Adam Oso Nino, and San Juanita Nino. (Dkt. No. 14). The motions before the Court seek (1) default judgment against Defendants Sandra and Adam, (2) an agreed partial judgment against Defendant San Juanita, and (3) the award of attorney fees and costs. (Dkt. Nos. 24, 30, 38). United States District Judge Marina Garcia Marmolejo referred this case to the Undersigned for a report and recommendation. (Dkt. No. 39). For the reasons set out below, all three requests for relief should be **GRANTED**.

I.  BACKGROUND

PHH's first amended complaint alleges the following: In 2002, Antonio Nino and Sandra Harrison executed a Texas Home Equity Note and a Texas Home Equity Security Instrument (collectively, the "Loan Agreement") with New Century Mortgage Corporation ("New Century"). (Dkt. No. 14 ¶¶ 16-17).[1] The Loan Agreement

---

[1] Based on the filings, it appears Sandra is Antonio's former spouse. (See Dkt. No. 1-1 at 7 ("Antonio S. Nino and wife, Sandra Nino")).

1

concerns the real property and improvements commonly known as 137 Otanes Avenue, Laredo, Texas, 78046, and more particularly described as follows:

> THE SURFACE ESTATE ONLY IN AND TO LOT THIRTEEN (13), BLOCK TWO-B (2B), SANTA RITA SUBDIVISION, UNIT VIII, SITUATED IN WEBB COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 13, PAGE 66, PLAT RECORDS OF WEBB COUNTY, TEXAS ("Property").

(Dkt. No. 14 at 2). In 2013, New Century transferred and assigned the Loan Agreement to Deutsche Bank National Trust Company ("Deutsche Bank"). (Dkt. No. 14 ¶ 18). This act rendered Deutsche Bank the "legal owner and holder of the Note." (Dkt. No. 14 ¶ 19). At all relevant times, PHH acted as Deutsche Bank's mortgage servicer and collected payments. (*Id.*).

After Antonio passed away in 2021, Sandra defaulted on the Loan Agreement. (*Id.* ¶¶ 20, 23-24). Once PHH learned of Antonio's death, it identified two heirs who acquired Antonio's interest in the Property: Adam, Antonio's son, and San Juanita, Antonio's surviving spouse (*Id.* ¶¶ 5-6, 20). PHH then filed this lawsuit and served process on Sandra, Adam, and San Juanita. (Dkt. Nos. 14, 23, 26, 28).

After Sandra and Adam failed to file an answer, PHH moved for default judgment and filed a request for entry of default against them. (Dkt. Nos. 29, 30). The Clerk entered default against Sandra and Adam on June 8, 2023. (Dkt. No. 33). San Juanita, however, filed a joint motion for agreed partial judgment with PHH. (Dkt. No. 24).

On June 9, 2023, the Court ordered PHH to submit a supplemental brief on its designation as mortgagee and a quantification of attorney fees and costs incurred.

(Dkt. No. 34). In response, PHH furnished its supplemental brief and motion for attorney fees and costs, including a sworn affidavit and supporting documentation. (Dkt. Nos. 35, 38). Additionally, PHH submitted two amended proposed judgments. (Dkt. Nos. 36, 37).

In sum, PHH seeks a final judgment declaring that:

(1) Deutsche Bank is the current owner and holder of the Note and the beneficiary of the Security Instrument;

(2) PHH, as the current servicer of the Loan Agreement, is a mortgage servicer, as defined under Texas Property Code § 51.0025;

(3) PHH may enforce its lien against the Property through foreclosure under the Texas Property Code and the terms of the Security Instrument;

(4) The outstanding balance of the Note, prejudgment interest, and post-judgment interest from the date of judgment until paid are secured by the Security Instrument; and

(5) PHH is entitled to attorney fees and court costs as allowed under the Note, Security Instrument, and Texas Civil Practices and Remedies Code.

(Dkt. Nos. 14 at 6-11, 30 at 4, 35 at 1, 36, 37 at 2, 38). PHH provides copies of the Loan Agreement, Notice of Default, and Notice of Acceleration to demonstrate compliance with the procedural requisites contained in the Texas Property Code. (*See* Dkt. No. 1-1 at 2-44).

## II. LEGAL STANDARD

Obtaining an entry of default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Here, as noted, Defendants Sandra and Adam have defaulted by failing to answer PHH's claim. (Dkt. No. 14. ¶¶ 20, 23-24). Moreover, entry of default against Defendants Sandra and Adam has been made by the Clerk. (Dkt. No. 33). The only remaining question is whether the third step—entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Nevertheless, default judgment determinations are left to the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *First*, the Court must determine if default judgment is appropriate under the circumstances, countenancing six factors:

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). *Second*, Courts must "assess the merits of the plaintiff's claims and find a sufficient basis in the pleadings for the

4

judgment." *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *2 (S.D. Tex. Jan. 11, 2018) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). By defaulting, a defendant is deemed to admit all "well-pleaded allegations" in the complaint but is "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). To determine whether an allegation is "well-pleaded," the Fifth Circuit looks to Federal Rule of Civil Procedure 8, which governs the sufficiency of a complaint. *Id.* at 498. Under that standard, "[d]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

"If the court determines that default judgment should be granted, the court must also determine the appropriate amount of damages." *People's United Equipment Finance Corp. v. Northern Yankee, LLC*, No. H-17-3528, 2018 WL 4334056, at *2 (S.D. Tex. June 6, 2018). Generally, damages should not be awarded without a hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is the plaintiff's burden to provide an evidentiary basis for the damages he seeks. *Hall*, 2020 WL 9814212 at *1.

### III. ANALYSIS

#### A. The Appropriateness of Default Judgment

In this case, the Undersigned finds that the six *Lindsey* factors, outlined above, weigh in favor of granting default judgment. *First*, there are no material issues of fact

in dispute as Defendants have failed to file any responsive pleadings in this case. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). *Second*, there is substantial prejudice to PHH's interest in pursuing his rights resulting from Defendants' failure to respond. *See Insurance Co. of the West v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *1 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). *Third*, the grounds for default have been clearly established due to Defendants' failure to answer or defend. *See Guerrero*, 2018 WL 375391 at *2. *Fourth*, there is no evidence before the Court indicating that Defendants' silence is the result of a good-faith mistake or excusable neglect. *Id.* (citing *Lindsey*, 161 F.3d at 893). *Fifth*, "the harshness of default judgment is mitigated as time passes without an appearance or filing from an opposing party," which in this case has been over a year. *Id. Sixth*, the Undersigned is unaware of any facts which would give rise to good cause to set aside the default if challenged by Defendants. *Id.*; *see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (Fifth Circuit upheld district court's grant of default judgment after defendant failed to respond to summons within forty days).

Because Defendants were properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (*See* Dkt. No. 14 ¶¶20, 23-24). Thus, the Undersigned finds that entry of default judgment is appropriate here.

### B. The Basis for Judgment in the Pleadings

Where, as here, a default has been entered under Rule 55, "the factual

allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). However, "a defendant's default does not in itself warrant the court in entering a default judgment;" rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

### 1. PHH'S Authority as Mortgage Servicer

Chapter 51 of the Texas Property Code provides the Texas law governing enforcement of a deed of trust which creates a lien against real property. See Tex. Prop. Code §§ 51.0001-.015. It defines a mortgagee to include "the grantee, beneficiary, owner, or holder of a security instrument," or "the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4)(A)(C). While mortgage servicer "means the last person to whom a mortgagor has been instructed by the current mortgagee to sends payments for the debt secured by a security instrument." Tex. Prop. Code § 51.0001(3). Provided a mortgage servicer follows Texas Property Code § 51.0025, a mortgage servicer has the authority to foreclose. *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 927 (N.D. Tex. 2014) ("Both the mortgagee and the mortgage servicer have the authority to foreclose.") Texas Property Code § 51.0025 provides:

> A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:
> (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and
> (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the

7

> mortgagee and:
>> (A) the address of the mortgagee; or
>> (B) the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage.

Tex. Prop. Code § 51.0025. Here, Plaintiff attached four sets of documents to its Complaint: (i) the Texas Home Equity Note between New Century, Antonio, and Sandra; (ii) the Texas Home Equity Security Instrument that Antonio and Sandra granted to New Century, as beneficiary; (iii) New Century's assignment to Deutsche Bank; and (iv) the notices of default sent from PHH to Sandra. (Dkt. No. 1-1 at 2-44). Under Rule 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). The Notice of Acceleration, dated May 13, 2022, provides:

> We [Mackie Wolf Zientz & Mann, P.C.] have been retained by PHH MORTGAGE CORPORATION, Mortgage Servicer for DEUTSCHE BANK . . . , the current Mortgagee of the Note and Deed of Trust . . . A servicing agreement between the Mortgagee, whose address is: [] and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.

(Dkt. No. 1-1 at 50). The Undersigned takes as true (i) that Deutsche Bank is the current owner and holder of the Note and the beneficiary of the Security Instrument and (ii) that PHH, as the current servicer of the Loan Agreement, is a mortgage servicer, as defined under Texas Property Code § 51.0025. (Dkt. No. 1 at 5) ("Plaintiff is the current servicer of the Loan Agreement on behalf of Deutsche Bank"); (Dkt. No 35 at 2) ("Plaintiff has submitted Amended Proposed Judgments correctly identifying Plaintiff as the current mortgage servicer of the mortgagee, Deutsche Bank).

8

Accordingly, PHH has the authority to foreclose on the Property. *See* Tex. Prop. Code Ann. § 51.0025; *see, e.g., Johnson*, 999 F. Supp. 2d at 927 (discussing mortgage servicer's ability to foreclose); *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 757–58 (N.D. Tex. 2013) (discussing the same).

### 2. PHH's Foreclosure Claim as to Defendants Sandra and Adam

Texas law requires a party to secure a court order to foreclose on a home equity loan. Tex. Const. art. XVI § 50(a)(6)(C). Section 51.002 of the Texas Property Code provides for the sale of real property pursuant to a security instrument with a power of sale. A lien subject to non-judicial foreclosure "may also be foreclosed by judgment in an action for judicial foreclosure." Tex. R. Civ. P. 735.3.

PHH produced a copy of the security instrument signed by Antonio and Sandra. The security instrument includes a power of sale provision. To foreclose under a security instrument in Texas with a power of sale, the lender need only demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under art. XVI § 50(a)(6) of the Texas Constitution; (3) the plaintiff is in default under the note and security instrument; and (4) plaintiff received notice of default and acceleration. *Huston v. U.S. Bank Nat'l Ass'n, et at.*, 988 F.Supp.2d 732, 740 (S.D. Tex. Dec. 19, 2013); Tex. Prop. Code § 51.002. Here, the evidence produced by PHH establishes the debt, the lien created under art. XVI, § 50(a)(6) of the Texas Constitution for home equity loans, and Sandra's default. In addition, PHH's evidence shows that a written notice of default and intent to accelerate was sent to Sandra by certified mail and provided at least 20 days to cure the default as required by Tex. Prop. Code §

9

51.002(d). Thus, as to Sandra, each element of a judicial foreclosure claim has been met, rendering this claim substantively meritorious.

PHH also seeks to foreclose on Adam's interest in the property. PHH asserts that it has a statutory probate lien against the Property under the Loan Agreement and Texas Estates Code §§ 101.001(b) and 101.051, which provide that a decedent's estate and its debts immediately pass to the decedent's heirs. (Dkt. No. 14 ¶¶ 20, 29-39); *See* Tex. Est. Code §§ 101.001(b) and 101.051; *Ocwen Loan Servicing, LLC v. Deane*, Civil Action No. 4:15-CV-00682-O-BP, 2017 WL 6816499, at *3 (N.D. Tex. Dec. 1, 2017), *R.&R. adopted by* 2018 WL 309105 (N.D. Tex. Jan. 5, 2018). "The remedy of one holding an unpaid claim against the estate is to enforce a statutory lien against the property in the hands of the heirs, devisees, or legatees who receive estate property." *Deane*, 2017 WL 6816499, at *3 (citing *Potts v. W.Q. Richards Mem'l Hosp.*, 558 S.W.2d 939, 943 (Tex. Civ. App.—Amarillo, 1977, no writ)). PHH asserts that Adam is Antonio's heir-at-law. (Dkt. No. 14 ¶ 6). As an heir-at-law, Adam's interest is subject to the Loan Agreement debt owed. While PHH has not supplied evidence showing that it notified Adam of the default and acceleration, the Texas Property Code provides that a mortgage servicer:

> "shall serve a *debtor* in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien . . . ."

Tex. Prop. Code Ann. § 51.002(d) (emphasis added).[2] Thus, along with Sandra, PHH

---

[2] *See Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 55–56 (5th Cir. 2008) (agreeing with district court's conclusion that Texas law did not require mortgage servicer, in the event of the debtor's death, "to conduct some level of investigation to determine the legal heirs for purposes of proper

has shown that it is entitled to a default judgment authorizing foreclosure on Adam's interest in the property. *See Singleton v. U.S. Bank Nat'l Ass'n*, No. 4:15-CV-100-A, 2016 WL 1611378, at *7 (N.D. Tex. Apr. 20, 2016); *see, e.g., U.s. Bank Nat'l Ass'n v. Chase*, No. 5:19-CV-229-M-BQ, 2020 WL 5048154, at *8 (N.D. Tex. Aug. 4, 2020) (Plaintiff "has shown that: a debt exists; the debt is secured by a lien; Defendants, Borrowers' heirs-at-law, are in default under the Loan Agreement; and it properly provided notice of the default and acceleration on the debt.").

Because the well-pled facts and the evidence establish PHH is entitled to foreclosure of the Property under the terms of the Loan Agreement and Tex. Prop. Code § 51.002, its Motion for Default Judgment against Defendants Sandra and Adam should be granted. (Dkt. No. 30).

### 3. PHH's Foreclosure Claim as to Defendant San Juanita

On March 20, 2023, San Juanita filed a joint Motion for Agreed Partial Judgment with PHH. (Dkt. No. 24). On June 22, 2023, PHH filed an Amended Motion for Agreed Partial Judgment correctly identifying itself as the current mortgage servicer of the mortgagee, Deutsche Bank (Dkt. No. 36). In light of the agreement of the Parties to resolve this matter, the Undersigned recommends Plaintiff's Amended Agreed Partial Judgement be granted. (Dkt. No. 24).

### 4. Outstanding Balance of the Note

---

notification prior to foreclosure"); *Deutsche Bank Tr. Co. Ams. for Residential Asset Mortg. Prods., Inc. v. Comstock*, Civil Action No. 3:16-CV-3210-G-BH, 2018 WL 3352992, at *9 (N.D. Tex. June 11, 2018) (finding mortgage servicer had satisfied fourth element (notice) necessary to obtain foreclosure through a power of sale by notifying the debtor, who was deceased, of the default and acceleration), *R. & R. adopted by* 2018 WL 3344374 (N.D. Tex. July 9, 2018).

PHH's Motion for Default Judgement seeks a final judgment declaring that the outstanding balance of the Note, prejudgment interest, and post-judgment interest from the date of judgment until paid are secured by the Security Instrument. (Dkt. No. 30 at 4). PHH claims the Principal amount of the loan secured by the Property is $84,000.00. (Dkt. No. 14 ¶ 16). This amount is supported by the Note and Security Instrument. (Dkt. No. 1-1 at 2 and 8). Thus, PHH is entitled to a declaration that the outstanding balance is secured by the Security Interest.

### 5. Prejudgment Interest

Under 28 U.S.C. § 1961(a), in diversity cases, pre-judgment interest rates are governed by state law. *See Bos. Old Colony Ins. v. Tiner Assocs.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, breach of contract cases are governed by Texas common law, which "allows prejudgment interest to accrue at the same rate as post-judgment interest." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). Where, as here, the contract provides for interest, post-judgment interest accrues "at a rate equal to the lessor of: (1) the rate specified in the contract . . . or (2) 18 percent a year." Tex. Fin. Code § 304.104. *See also MidCap Media Finance, LLC v. Pathway Data, Inc.*, No. A-15-CV-60-AWA, 2018 WL 3193817, at *15 (June 28, 2018). Here, the Note provides that "the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount" in the event of a default. (Dkt. No. 1-1 at 3). Paragraph 2 of the Note specifies that interest will be charged on unpaid principal "at a yearly rate of 8%" until the full amount of Principal has been paid. (*Id.* at 2).

Pre-judgment interest starts accruing on (a) the 180th day after the date the defendant receives written notice of a claim or (b) the date the suit was filed, whichever is earlier, and stops accruing on the day preceding the date of Final Judgment. *See Mason*, 2014 WL 199649, at *7; Tex Fin. Code. § 304.104. PHH filed its Complaint on August 16, 2022. (Dkt. No. 1). Sandra received notice of the claim on September 20, 2022. (Affidavit of Service, Dkt. No. 8). Adam received notice of the claim is September 1, 2022. (Affidavit of Service, Dkt. No. 7). San Juanita received notice of the claim on December 9, 2022 (Affidavit of Service, Dkt. No. 16). The earlier of these dates is August 16, 2022. Thus, PHH may recover pre-judgment interest from August 16, 2022, until the date of Final Judgment, calculated at the rate of 8% per annum.

### 6. Post-judgment Interest

PHH also requests post-judgment interest at the contractual rate of 8% per annum. (Dkt. No. 24-1 at 3; Dkt. No. 30-2 at 2). However, under 28 U.S.C. § 1961(a), in diversity cases, "[t]he post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Celtic Marine Corp. v. James C. Just. Cos., Inc.*, 593 F. App'x. 300, 305 (5th Cir. 2014) (quotation omitted). Parties can contract around the statutory rate, but to do so, the contract "must us[e] clear, unambiguous, and unequivocal language, otherwise the contract merely merges into the judgment." *Id.* (quotation omitted). Here, the contract does not explicitly reference post-judgment interest. Paragraph 2 of the Note provides that "the interest required by this Section 2 is the rate I will pay both before and after any default described in

13

Section 6(B) of this Note." (Dkt. No. 1-1 at 2). This provision does not make it "clear, unambiguous, and unequivocal" that it refers to the post-judgment interest rate.[3] Therefore, the Court should deny PHH's request for post-judgment interest at 8% and award post-judgment interest pursuant to 28 U.S.C. § 1961.

Accordingly, the Undersigned recommends the District Judge consult the Federal Reserve Statistical Release table of selected interest rates to determine the appropriate post-judgment interest rate for this action depending on when judgment is entered.[4]

### 7. Attorney Fees and Court Costs

As noted above, on June 9, 2023, the Court ordered PHH to submit a supplemental brief on its designation as mortgagee and a quantification of attorney fees and costs incurred. (Dkt. No. 34). In response, Plaintiff furnished its supplemental brief and motion for attorney fees and costs, including a sworn affidavit and supporting documentation. (Dkt. Nos. 35, 38).

As this case is in federal court based on diversity jurisdiction, Texas law is applicable to the award of attorney fees. See *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, a party may recover attorney fees only when allowed by statute or contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344

---

[3] The Fifth Circuit has found that parties do not "clearly, unambiguously, and unequivocally mean [] to refer to post-judgment interest except where they have expressly referred to post-judgment interest." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 459* (5th Cir. 2013); *See also Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993) (Language in the Note providing an interest rate "both before and after judgment" permissible).

[4] https://www.federalreserve.gov/releases/h15/

S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). More specifically, attorney fees may be recovered under mortgage contracts. *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014) (analyzing Texas law to determine that motions for attorney fees provided by mortgage contracts are permissible); *Velazquez v. Countrywide Home Loans Servicing*, 660 F.3d 893, 899 (5th Cir. 2011) (recognizing the recovery of attorney fees under a deed of trust).

In its motion for attorney fees and costs, PHH seeks attorney fees in the total amount of $14,568.50 and court costs in the total amount of $2,677.44 to be recovered from Defendants "as a further obligation owed by Defendants under the Note and Security Instrument." (Dkt. No. 38 at 2). An award of attorney fees and court costs is expressly contemplated by the Note, (Dkt. 1-1 at 4), and Security Instrument (Dkt. 1-1 at 19).

"Although courts should consider several factors when awarding attorney fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified the following factors to determine the reasonableness of attorney fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee

15

> customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818. The fee applicant is not required to present evidence on all the factors, however. *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.*

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney qualifications, reasonableness of the attorney fees, and the basis for the opinion may be sufficient to support an award of attorney fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where ... trial counsel's testimony concerning attorney fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so."). "The court, as a trier of fact, may award attorney fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Here, PHH submits a declaration from its counsel, as well as its corresponding billing records. (See Dkt. No. 38-1 at 20). The attorney declaration and the billing

16

records set out the hourly rates for the individuals who worked on the case, state that their rates are reasonable based on their skills and experience, and opines that the fees incurred are reasonable and necessary. (*Id.* at 2-4). The affidavit states that "the sum of $14,568.50 is reasonable attorney fees for representing PHH with regard to its enforcement of its interest in certain real property as a result of a default under the loan agreement." (*Id.* at 4). Under Texas law, PHH's evidence is "legally sufficient" for an award of attorney fees. See *In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("attorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney affidavit sufficiently established reasonable attorney fees and is legally sufficient to support the trial court's award of attorney fees."). The amount of attorney fees PHH seeks is reasonable as a matter of law. *See Ragsdale*, 801 S.W.2d at 882. Its Motion should therefore be granted. (Dkt. No. 38).

### 8. Damages

PHH does not seek monetary damages against Defendants, but instead the aforementioned final judgment declaring Defendants' interests in the subject Property and allowing foreclosure. (Dkt. Nos. 14 at 8; 30 at 3). Because PHH is not seeking liquidated damages, and PHH's claims are proved by the documents that make up the Loan Agreement, no hearing is therefore necessary to establish the

amount of PHH's damages.

## IV. RECOMMENDATION

For the foregoing reasons, the Undersigned recommends PHH's motions seeking (1) default judgment against Defendants Sandra and Adam, (2) an agreed partial judgment against Defendant San Juanita, and (3) the award of attorney fees and costs be **GRANTED** (Dkt. Nos. 24, 30, 38). The Undersigned finally recommends PHH be awarded a final judgment consistent with its amended proposed orders (Dkt. Nos. 36, 37).[5] Post-judgment interest should accrue at the applicable statutory rate.

## NOTICE TO PARTIES

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except

---

[5] The amended proposed orders should reflect PHH's status as mortgage servicer, however, and not mortgagee. The Undersigned recommends the following edit to paragraph 1 of Docket Number 36 and paragraph 5 of Docket Number 37: "Deutsche Bank National Trust Company, as Trustee for New Century Home Equity Loan Trust, Series 2003-2 Asset-Backed Pass-Through Certificates, Series 2003-2 ("Deutsche Bank") is the current legal owner and holder of the Note, current beneficiary under the Security Instrument, and the mortgagee as that term is defined in section 51.0001(4) of the Texas Property Code. PHH, as the current servicer of the Loan Agreement, is a mortgage servicer, as defined under Texas Property Code § 51.0025."

upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED ON September 27, 2023, at Laredo, Texas.

_____
CHRISTOPHER DOS SANTOS
UNITED STATES MAGISTRATE JUDGE